**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Aikens, et al., | No. CV-24-00199-TUC-RCC |
| Plaintiffs, | **ORDER** |
| v. | |
| Town of Sahuarita, et al., | |
| Defendants. | |

Before the Court is Defendants Town of Sahuarita, Sergeant Eric Heath, Lieutenant Juan Zamora, Sergeant Oscar Fruge, and Officer Zachery Woodrow's Motion to Enforce Settlement. (Doc. 14.) The Court held a case management conference on October 22, 2024, and ordered the parties to simultaneously brief whether Plaintiffs Stephen and Deborah Aikens[1] can seek relief beyond that indicated in their Notice of Claim. (Doc. 18.) The Court denies the motion and limits Plaintiffs' monetary recovery on their state claims to $1.00.

### I.   *Factual and Procedural History*

This case arises from a law enforcement interaction at Plaintiffs' residence on April 19, 2023. (Doc. 1.) Plaintiffs filed a Notice of Claim on October 16, 2023. (Doc. 14-1 at 2–4.) The Notice of Claim indicated former police officer Stephen Aikens was concerned "by the handling of the situation," but Plaintiffs were "willing to accept $1.00

---

[1] Plaintiffs' pleadings alternately refer to Plaintiffs' last name as "Aiken" or "Aikens." The Court refers to each Plaintiff by the surname Aikens, the name listed on the Complaint and the docket.

and mandatory training for all officers on exigent circumstances within six (6) months of an agreement to resolve their claims at this stage." (*Id.* at 3–4.) Defendants responded on December 18, 2023, indicating a willingness to resolve the case for $1.00 and additional training, but requiring a written settlement agreement with standard terms. (Doc. 14-2 at 2.) Subsequent communications between counsel involved discussions regarding the scope of the training and the review of body camera footage. (Docs. 14-3–14-7.) On March 29, 2024, Plaintiffs' then-counsel, Richard Wintory, sent a letter outlining specific training requirements to Defendants' counsel Jim Jellison. (Doc. 14-8.) Jellison responded on April 3, 2024, with a "draft" settlement agreement "for review and comment." (Doc. 14-9.) On April 5, 2024, Wintory responded that he had not heard back from his clients regarding the draft settlement agreement, and stated he "will try and call [Plaintiffs] again" and "will follow up with [Jellison] first of next week." (Doc. 14-10.) Instead, Plaintiffs filed their federal Complaint on April 10, 2024, alleging six federal and three state law claims. (Doc. 1 at 6–9.)

Jellison emailed Wintory on April 17, 2024, indicating that he believed the settlement was accepted on April 3, 2024, when Defendants "accepted your April 1, 2024 settlement offer."[2] (Doc. 14-12.) On April 17, 2024, Wintory responded, stating he would relay Defendants' position to Plaintiffs, and that he "would get [Jellison] a formal response next week" after he "had the opportunity to get client input." (Doc. 14-13.) However, on April 23, 2024, Wintory informed Jellison that Plaintiffs had retained present counsel, Dustin Romney, that day. (Doc. 14-14.) Romney later emailed Jellison on April 30, 2024, indicating he believed "there may have already been a binding settlement" and asking to discuss the matter. (Doc. 14-15.)

Defendants filed the present Motion to Enforce Settlement Agreement on September 12, 2024. (Doc. 14.) Plaintiffs filed a Response (Doc. 15) and Defendants a Reply (Doc. 16).

---

[2] Plaintiffs' April 1 settlement offer appears to be a typographical error. The email also states Plaintiffs' offer was received March 29, 2024, and Defendants "accepted [the] offer of settlement and emailed [Wintory] a draft Settlement and General Release Agreement" on April 3, 0224, and a revised agreement later that day. (Doc. 14-12.)

## II. Settlement Agreement

Defendants argue that an agreement was reached based on the parties' communications and the draft settlement agreement. (Doc. 14.) They contend that Plaintiffs' Notice of Claim constituted an offer, which Defendants accepted, and the essential terms of the settlement—i.e., the $1.00 payment and additional training—were agreed upon. (*Id.* at 6.) They also emphasize that Wintory never explicitly disputed the existence of a settlement agreement and Romney believed an agreement had been reached. (*Id.*)

Plaintiffs argue there is no binding settlement agreement because there was no unequivocal acceptance of an offer and no meeting of the minds regarding the essential terms. (Doc. 15 at 3.) They add that Wintory's March 29, 2024 letter was not an offer, and, even if construed as an offer, Defendants' response constituted a counteroffer due to the inclusion of additional terms. (*Id.* at 3, 5.)

A district court may enforce a settlement agreement in cases where (1) the agreement is complete, and (2) both parties agreed to the material terms of settlement. *Escobedo v. Solano*, No. 1:23-cv-00373 KES SKO, 2025 WL 407324, at *2 (E.D. Cal. Jan. 8, 2025) (first citing *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994), then citing *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987)). An enforceable contract requires "an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent." *Buckholtz v. Buckholtz*, 435 P.3d 1032, 1035 (Ariz. Ct. App. 2019) (citations omitted); *Myers v. Experian Info. Sols. Inc.*, 734 F. Supp. 3d 912, 919 (D. Ariz. 2024) ("In Arizona, for a valid contract to exist, the contract must manifest mutual assent, i.e., the parties' intent to be bound.") (citations omitted). "Mutual assent is based on objective evidence, not on the hidden intent of the parties, and objective evidence includes both written and spoken words, as well as acts." *Buckholtz*, 435 P.3d at 1035.

The Court finds that no enforceable settlement agreement existed between the parties because there was no assent to the material terms of training. While the parties

engaged in settlement negotiations, the record does not demonstrate a meeting of the minds on all material terms. Defendants' initial response to the Notice of Claim included additional terms, transforming it into a counteroffer. These additional requirements included "a general release of claims, a no-admissions clause, the execution of a CMS affidavit, a promise to dismiss any administrative or judicial filings, and a promise to refrain from any further filings arising from the facts of this case." (Doc. 14-2.)

The subsequent communications and draft settlement agreement further reflect ongoing negotiations about material aspects of the officer training. For instance, Wintory indicates that the release of body camera footage would further clarify "the types of training needed." (Doc. 14-3.) After reviewing the body camera footage, Wintory stated his clients needed certain "components of the incident . . . addressed in training" to come to a settlement agreement. (Doc. 14-8 at 2.) The negotiations regarding types of training demonstrates this material term of settlement had not been decided.

Moreover, in response to Wintory's added requirements for settlement, Jellison sent Wintory a *draft* for "review and comment," with empty signature spots. (Doc. 14-9 at 2–9.) Wintory responded that he sent the draft to Plaintiffs but had not received a response and would attempt to contact them again to get their response to the proposed settlement. (Doc. 14-10.) None of these facts suggest either party believed they had entered into a binding agreement. Romney's subsequent request—soon after taking on this case—to meet Jellison to discuss *whether* a binding agreement existed does not change this conclusion.

### III.    Counsel's Authority to Settle

"An attorney without actual authority to settle a dispute can nevertheless do so if the other party to the agreement reasonably assumes that the lawyer is authorized to do the act on the basis of the client's (and not the lawyer's) manifestation of such authorization." *See Robertson v. Alling*, 351 P.3d 352, 356 ¶ 17 (Ariz. 2015) (cleaned up). "The party seeking to enforce the settlement bears the burden of showing that its reliance on the attorney's apparent authority was reasonable." *Id.* (citing *Miller v. Mason-*

*McDuffie Co. of S. Cal.*, 739 P.2d 806, 811 (Ariz. 1987)).

Plaintiffs argue their counsel lacked authority to settle, emphasizing no explicit authorization was given to finalize settlement terms after December 2023. (Doc. 15 at 7.) They also contend counsel's actions were part of ongoing negotiations and that the training requirements "were material to Plaintiff in reaching an agreement." (*Id.* at 6.) Plaintiffs alternatively indicate counsel exceeded his authority. (*Id.*)

Defendants argue Plaintiffs' counsel's actions suggested he had the authority to settle the case. (Doc. 14 at 6.) For instance, counsel's filing of the Notice of Claim and subsequent communications suggest Plaintiffs intended to settle and a contract was formed. (*Id.* at 6–7.) They assert that counsel's apparent authority was supported by the lack of objection from Plaintiffs during negotiations. (Doc. 16 at 2.)

Based on Wintory's statements and Plaintiffs' actions, the Court concludes Defendants could not reasonably assume Wintory was authorized to enter into a settlement agreement. Wintory never suggested he had authority to agree to the settlement terms. Rather, he indicated on multiple occasions that he needed to get his clients' approval. In addition, the language in the emails does not suggest either party believed Wintory had authority to settle. Jellison sent a "*draft*" settlement agreement for "*review and comment*," and Wintory responded that he needed to show and get approval from his clients.

### IV. Ability to Exceed Notice of Claim

#### a. Federal Claims

Plaintiffs argue that A.R.S. § 12-821.01 does not apply to their federal law claims (six of eight total claims). (Doc. 20 at 2.) Defendants make no counterargument. The Court finds that the state notice requirements do not apply to Plaintiffs' federal § 1983 claims. *See Felder v. Casey*, 487 U.S. 131, 153 (1988) (declining to apply state statute to plaintiff's § 1983 claim "as a matter of equitable federalism").

#### b. State Claims

Plaintiffs next assert they are not limited to the $1.00 settlement offer in their

1 Notice of Claim because the language in A.R.S. § 12-821.01 does not limit damages
2 sought in subsequent litigation—once the public entity rejects the offer, the plaintiff is
3 free to litigate for any provable amount. (Doc. 20 at 2, 4.) They argue that if the statute
4 capped damages, public entities would never accept settlement offers "because the mere
5 existence of an offer would function as a damages cap and would allow the public entity
6 to continue litigating without any additional risk exposure." (*Id.* at 4.) Finally, Plaintiffs
7 argue that interpreting the statute as a damages cap would violate the Arizona
8 Constitution's Anti-Abrogation Clause and due process by forcing litigants to cap
9 damages without discovery. (*Id.* at 5 (citing Ariz. Const. art. II § 31).)

Defendants counter that Plaintiffs are limited to the $1.00 compensation and mandatory training because the purpose of the sum certain requirement in A.R.S. § 12-821.01(A) is to allow for investigation, assessment, settlement, financial planning, and budgeting. (Doc. 19 at 2.) Defendants contend Plaintiffs' Notice of Claim clearly stated their willingness to accept $1.00 and mandatory training, with no suggestion of seeking an increased amount in litigation, and no factual support for any other amount. (*Id.* at 3, 5.)

For the reasons stated below, the undersigned finds Plaintiffs cannot litigate this matter above the $1.00 amount sought in the Notice of Claim because it provided neither (1) a sum certain, nor (2) notice of liability beyond nominal damages.

### i. Sum Certain Requirement

Arizona Revised Statute § 12-821.01 requires that a plaintiff with "claims against a public entity" provide a notice of claim that "contain[s] a specific amount for which the claim can be settled and the facts supporting that amount." A.R.S. § 12-821.01(A). Meaning, "[t]he claimant must present the [governmental entity] with a *definite amount* which he is willing to accept *as full satisfaction of his claim*. As long as the claimant states a *definite and exact amount*, and the government may *completely satisfy its liability by paying that sum*, the claim letter satisfies the sum certain requirement." *Yollin v. City of Glendale*, 191 P.3d 1040, 145 (Ariz. Ct. App. 2008) (emphasis added); *City of Mesa v.*

*Ryan in and for Cnty. of Maricopa*, 557 P.3d 316, 319 (Ariz. 2024) ("All that is required is that the claimant offer a specific settlement amount that leaves *no room for debate* about what the public entity must *pay to settle the claim*.") (emphasis added) (citing *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 493 (Ariz. 2007)). The sum certain requirement "protects the [public entity] from excess or unwarranted liability and facilitates settlement of claims by allowing" the public entity to investigate, budget, and consider settlement. *Yollin*, 191 P.3d at 1045. "[C]laimants must strictly comply with the statute." *City of Mesa*, 557 P.3d at 319 (citing *Falcon ex rel. Sandoval v. Maricopa Cnty.*, 144 P.3d 1254, 1256 (Ariz. 2006)). Failure to comply "bar[s a plaintiff] from suing the public entity or employee on the claim." *City of Mesa*, 557 P.3d at 317.

Plaintiffs' Notice of Claim offer of $1.00 *and* police training did not meet the sum certain requirement because it did not state an exact monetary amount that would settle the entire claim. *See Chunnui v. Peoria Unified Sch. Dist.*, No. CV-24-00503-PHX-MTL, 2024 WL 4858383, at *6 (D. Ariz. Nov. 21, 2024) (finding notice of claim invalid because "there is no *amount of money* each Defendant could offer *to satisfy its liability*") (emphasis added). The Notice of Claim was a two-part offer—a nominal monetary sum *and* non-monetary training. Its insufficiency is supported by Plaintiffs' argument that despite both parties agreeing to the $1.00, a binding settlement could not have occurred because the terms of the police training were still being negotiated. The addition of non-monetary conditions to settlement is not provided for in the statute, and strict compliance is mandated. The failure to meet the sum certain requirements means Plaintiffs are prevented from suing Defendants entirely on the state claims. *See City of Mesa*, 557 P.3d at 317. However, Plaintiffs may still seek the nominal damages and training.

### ii. Nominal Damages

Certain forms of relief are not subject to Arizona Revised Statute § 12-821.01 notice requirements—for instance, claims for declaratory, injunctive, and equitable relief. *See Spectrum Pac. W. LLC v. City of Yuma*, 507 F. Supp. 3d 1186, 1189 (D. Ariz. 2020) (declaratory and injunctive relief); *see also Bollfrass v. City of Phoenix*, No. CV-19-

04014-PHX-MTL, 2020 WL 3440289, at *16 (D. Ariz. June 23, 2020) (equitable relief). The Ninth Circuit has stated that Arizona would also exempt claims for one dollar in nominal damages as they "are more like pure declaratory relief because they are by definition minute and so of no budgetary consequence," and "have no direct effect upon [a public entity's] financial planning or budgeting." *Platt v. Moore*, 15 F.4th 895, 903 (9th Cir. 2021) (quoting *Martineau v. Maricopa Cnty.*, 86 P.3d 912, 915 (Ariz. Ct. App. 2007)). Moreover, unlike "punitive and compensatory damages, nominal damages are awarded to vindicate rights," and to identify "the prevailing party for the purposes of awarding attorney's fees and costs." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 872 (9th Cir. 2017).

Even if the Notice of Claim included a sum certain, it asked for only nominal damages and did not provide a sufficient basis for Defendants to assess liability, consider settlement, or budget for litigation beyond that amount. The Notice of Claim stated that Stephen Aikens was a former police officer who suffered "indignity," approximately $50.00 in property damage, and distress. (Doc. 14-1 at 2.) Plaintiffs were concerned with how officers handled a warrantless entry to their home and were willing to settle for $1.00 and training on exigent circumstances. (*Id.*) "Nominal damages claims of one dollar have consistently been understood as categorically different from even small compensatory damages claims, as compensatory damages and nominal damages serve distinct purposes."" *Mohareb v. Maricopa Cnty. Spec. Health Care Dist.*, No. CV-23-02226-PHX-DWL, 2024 WL 2746952, at *4 (D. Ariz. May 29, 2024) (quoting *Platt*, 15 F.4th at 904)). Plaintiffs were seeking a nominal sum and the vindication of their rights. However, there was no indication that if settlement failed, Plaintiffs would seek actual, compensatory, or punitive damages, forms of relief that could greatly affect the entity's coffers. Based on the Notice of Claim, Defendants could not adequately assess liability, consider settlement, and budget for future litigation beyond the nominal sum. Unlike these larger claims for monetary relief, because nominal damages and equitable relief are not subject to the notice of claim requirements, a failure to meet these requirements does

not preclude Plaintiffs from pursuing their state claims seeking $1.00 (nominal damages) and officer training (equitable relief). Therefore, Plaintiffs' state claims may proceed, but relief is limited to $1.00.[3]

Accordingly, IT IS ORDERED Defendants' Motion to Enforce Settlement Agreement is DENIED. (Doc. 14.)

Dated this 26th day of February, 2025.

_____
Honorable Raner C. Collins
Senior United States District Judge

---

[3] Exclusive of attorney's fees and costs. *See Bayer*, 861 F.3d at 872.